1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YI QIAO, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>RONGFANG "FLORA" CHAN, *et al.*,<br><br>                    Defendants. | Case No. C20-1821-RSM<br><br>ORDER GRANTING PLAINTIFFS'<br>MOTION FOR TEMPORARY<br>RESTRAINING ORDER |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiffs Yi Qiao, Ambleside Holdings USA, Inc. ("Ambleside") and De Xiang Holding, Ltd.'s Motion for Temporary Restraining Order.  Dkt. #11.  Plaintiffs request that this Court temporarily enjoin Defendants from selling, transferring, or encumbering certain properties until the Court rules on Plaintiffs' pending motion for remand, Dkt. #5.  Defendants oppose Plaintiffs' motion.  Dkt. #14.  Having considered Plaintiffs' Motion, Defendants' Response, the attached exhibits and remainder of the record, the Court GRANTS Plaintiffs' Motion.

//

//

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 1

## II.   BACKGROUND

Between 2016 and 2018, Plaintiff Qiao was allegedly enticed by Defendant Rongfang "Flora" Chan into investing millions in a hotel construction project in Marysville, Washington. Dkt. #1-1 at ¶ 1.  Due to Defendant Chan's alleged mismanagement and self-dealing, Plaintiff Qiao invested, loaned, and/or personally guaranteed millions of dollars in support of the construction project.  After hiring attorneys and forensic accountants, Plaintiff Qiao discovered "hundreds of thousands of dollars" flowing to Defendant Chan and companies she controlled. *Id.* at ¶ 3.  After the construction project fell through due to "ruinous construction defects," Defendant Chan sold her interest in the project and "washed her hands of it." *Id.*

On November 30, 2020, Plaintiffs filed this action in King County Superior Court against Defendants Chan, Washington Building Supplies Inc, Premium Place L.P., Garden Ridge LLC, and Washington Hotel and Restaurant Development LLC, Silver Plaza, LLLP, Washington Regional Center Management LLC, Zhongzhen (USA) Investment Limited, and Does 1-10 to recover the sums lost through Defendant Chan's alleged fraudulent activity.  Dkt. #1-1.  Plaintiffs allege breach of contract, fraud, unjust enrichment, misappropriation and conversion, breach of fiduciary duty, and breach of duty of good faith and fair dealing.  *Id.* at ¶¶ 95-102.  On December 2, 2020, the state court ordered Defendants to appear and show cause why writs of attachment and garnishment should not issue.  Dkt. #6-1.  The state court scheduled its show cause hearing for December 16, 2020.  *Id.*

Starting December 11, 2020, Defendant Chan began filing documents with the Washington secretary of state to change the ownership of the defendant entities in this lawsuit. These changes included removing herself as the governor of Garden Ridge Investment, LLC and Zhonghzhen (USA) Investment Limited and listing individuals who are not parties to the instant

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 2

lawsuit. *See* Dkt. #6-3 at 4-9, 16-21. Defendants' counsel appeared at the scheduled show cause hearing in King County Superior Court on December 16, 2020 and requested an extension for purposes of providing "a substantive response to the writ of attachment motion." Dkt. #6 at ¶ 8. The superior court granted Defendants an extension on the condition that Defendants "affirm[ed] that they would not seek to sell or encumber the properties" sought to be attached. *Id.* The court then continued the hearing to December 18, 2020. *Id.*

Hours before the scheduled hearing, Defendants removed this action to the U.S. District Court for the Western District of Washington based on the recent ownership changes to the entity defendants. Dkt. #1. The superior court stated that it "will issue the Writ if the Court did not lose jurisdiction," Dkt. #12-1 at 3, but ultimately concluded, after hearing submissions from the parties, that it lost jurisdiction as a result of Defendants' removal. *Id.* at ¶ 13.

In response to the removal, Plaintiffs filed a motion titled "emergency motion for remand" in this Court on the basis that Defendants' removal attempt is *prima facie* baseless and was made solely to create delay. Dkt. #5. The Court determined that Plaintiffs' filing failed to comply with Fed. R. Civ. P. 65 and re-noted Plaintiffs' motion for January 15, 2021 pursuant to this Court's local rules. Dkt. #10. Plaintiffs now seek emergency relief from this Court during the pendency of the motion for remand. Dkt. #11 ("TRO Motion"). Specifically, Plaintiffs seek to prevent Defendants from disposing of the assets sought to be attached in Plaintiffs' Writ of Attachment motion.

### III.    DISCUSSION

#### A. Legal Standard

To succeed on a motion for temporary restraining order, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 3

the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The Ninth Circuit employs a "sliding scale" approach, according to which these elements are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). However, the moving party must still make at least some showing that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. Plaintiffs have met these requirements here.

       *1. Likelihood of Success on the Merits*

       Plaintiffs argue they are likely to succeed on their remand motion because Defendants' removal is "*prima facie* baseless." Dkt. #11 at 8. When a case is filed in state court, removal is typically proper if the complaint raises a federal question or where there is diversity of citizenship between the parties and an amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a). Typically, it is presumed "that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1042 (9th Cir. 2009).

       Here, Defendants claim diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Dkt. #1. Diversity jurisdiction requires diversity of citizenship between the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Diversity of citizenship requires "complete diversity," meaning that "each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litigation,* 549 F.3d 1223, 1234 (9th Cir. 2008). Crucially, "diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
- 4

(9th Cir. 1994) (citing *Cheng v. Boeing Co.,* 708 F.2d 1406, 1412 (9th Cir.), *cert. denied,* 464 U.S. 1017, 104 S. Ct. 549, 78 L.Ed.2d 723 (1983).

Defendants' notice of removal attempts to construct diversity jurisdiction by erasing all Washington-based parties from the litigation and leaving only foreign-based parties. Specifically, Defendants argue that Plaintiff Ambleside, a Washington citizen, is a "sham plaintiff," and the remaining plaintiffs—Qiao and De Xian Holding, Ltd.—are a Canadian citizen and Samoan corporation, respectively. Dkt. #1 at 3-4. Defendants also contend that the Washington-based corporate defendants are "nominal parties" and should not be considered, leaving only Defendant Chan—a Canadian citizen. *Id.* at 4-5. Defendants alternatively argue that even if these corporate defendants are considered, forthcoming corporate disclosure statements will reveal that these companies are owned by various combinations of Chinese, Hong Kong, and Canadian citizens. *Id.* at 5. Thus, Defendants' stated grounds for removal is diversity of jurisdiction between two foreign-based Plaintiffs, Qiao and De Xian Holding, Ltd., and either one foreign-based Defendant, Chan, or multiple foreign-based defendants. Because a lawsuit by foreign plaintiffs against foreign defendants does not meet the "complete diversity" requirement, *Nike, Inc.*, 20 F.3d at 991, Defendants' claimed basis for removal fails as a matter of law. In response, Defendants do not address the facial deficiencies in their notice of removal. Instead, they offer only the conclusory assertion that Plaintiffs' basis for remand is "mistaken" without further explanation. *See* Dkt. #14 at 3.

Accordingly, Plaintiffs have demonstrated likelihood of success on the merits of their motion for remand.

Defendants also argue that Plaintiffs have failed to show a likelihood of success on the merits of their claims, given that the TRO motion focuses on their likelihood to succeed on their

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 5

motion to remand—not the likelihood of success on the claims in their complaint.  As a result, their motion "contains no evidence with respect to how any claims *might* be proven, let alone how they are *likely* to be proven."  Dkt. #14 at 4.  The Court disagrees for the reasons set forth below.

In addition to discussing their remand motion, Plaintiffs also argue they are likely to succeed on their motion for writ of attachment.  Dkt. #11 at 11-12.  To prevail on a motion for issuance of prejudgment writ of attachment, plaintiffs must establish that (1) there is probable cause to believe that the alleged statutory ground for attachment exists, and (2) the probable validity of the claims.  RCW 6.25.070(1); *see L.C. v. Gilbert,* Case No. C09–5586 BHS, 2010 WL 2650603 (W.D. Wash. 2010).  The second factor, probable validity of their claims, relies on the same evidence supporting a finding that Plaintiffs are likely to succeed on the merits of their breach of contract claims.  *INX, LLC v. Music Grp. Servs. U.S., Inc.*, No. C13-2126RAJ, 2013 WL 6729612, at *3, n.2 (W.D. Wash. Dec. 19, 2013).

Here, Plaintiffs argue that the state court record supports the validity of their breach of contract claims.  Dkt. #11 at 11.  The Court agrees.  The record, which includes copies of the agreements entered into between the parties, supports Plaintiffs' claims that the parties entered into valid written agreements, that Defendants owe Plaintiff debts and obligations pursuant to these contracts, and that Plaintiffs have suffered harm as a result of Defendants' refusal to pay. *See* Dkt. #2 at 20-25, 49-105.  Accordingly, Plaintiffs have demonstrated likelihood of success on the elements of their breach of contract claim.  *See Lehrer v. State, Dept. of Social & Health Servs.,* 101 Wash.App. 509, 516, 5 P.3d 722 (Wash. App. 2000) ("Generally, a plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage.").  Because Plaintiffs bring this action under breach of contract, *see* Dkt. #1-1 at ¶¶ 95-100, in

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

addition to other claims, Plaintiffs have demonstrated a likelihood of success on the merits of their claims.

Finally, Defendants object that Plaintiffs' motion is not "clear who they wish to restrain" as it "lumps all Defendants together for purposes of seeking relief." Dkt. #14 at 4. The Court finds this argument unavailing, as the target of the proposed injunction is the list of properties under Appendix A—not the individuals or entities that own them.

### 2. Irreparable Harm

Next, Plaintiffs have demonstrated a likelihood of irreparable harm absent injunctive relief. Plaintiffs fear that Defendants "are attempting to liquidate assets as quickly as possible to frustrate Plaintiffs' efforts to recover on an eventual judgment." Dkt. #11 at 7. Defendants respond that Plaintiffs have offered no evidence that Defendants are disposing of property before a court can rule on Plaintiffs' motion for Writ of Attachment. The Court disagrees. Plaintiffs cite to their state court motion for writ of attachment, which identifies Defendant Chan's sales of multiple Washington properties over the past year and current efforts to sell Silver Plaza. *See* Dkt. #2 at 424:23-27, 425:1-2. Defendants do not meaningfully dispute these claims, but instead contend that Plaintiffs' reference to arguments raised in their state court motion cannot constitute "evidence." Dkt. #14 at 5. However, the state court record includes the sworn declaration from Plaintiff Qiao filed in support of Plaintiffs' motion for writ of attachment. *See* Dkt. #2 at 20. This declaration plainly states that on or around November 13, 2020, Plaintiff "learned that Chan is soliciting buyers for Silver Plaza." Dkt. #2 at 24. For that reason, the Court finds that Plaintiffs have supported their fears with more than mere assertions. *Cf. Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) ("[T]he applicant must do more than assert that the adverse party would dispose of evidence if given notice.") (internal citation omitted).

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 7

Furthermore, Plaintiffs have presented troubling evidence of Defendants' efforts to frustrate prosecution of this action through evasion and delay.  Defendants' maneuvers include (1) dodging service of process, which required Plaintiffs to obtain an order permitting alternative service; (2) transferring ownership interest in defendant entities within the past weeks; and (3) removing this action to federal court on a facially improper basis.  *See* Dkt. #2 at 454; Dkt. #6-3 at 4-9, 16-21; Dkt. #6 at ¶ 12.  Again, Defendants fail to meaningfully address any of these issues in their response.  In light of this evidence, the Court finds that Plaintiffs have demonstrated a likelihood that Defendants may continue attempting to frustrate prosecution and recovery in this action—which reasonably includes liquidation of their assets during the pendency of this removal proceeding.

Finally, Plaintiffs have demonstrated that irreparable harm would result if Defendants dispose of assets sought to be attached in Plaintiffs' Writ of Attachment motion.  Defendants contend that no exigency exists, given that any economic injury "can be remedied by a damage award."  Dkt. #14 at 5 (citing *Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).  Yet the irreparable harm Plaintiffs face is more than mere "economic injury alone" that can be recovered through damages.  Here, if Defendants sell, transfer or encumber the property before the Court rules on Plaintiffs' motion to remand, Plaintiffs will lose the ability to attach the property and consequently have no recourse for recovering on an eventual judgment.  A plaintiff losing her ability to recover a money judgment constitutes irreparable harm warranting temporary injunctive relief. *See INX, LLC*, 2013 WL 6729612, at *3 (Finding irreparable harm if defendant disposes of "only significant asset in Washington, which would result in an inability to collect money judgment"); *see also In re Estate of Ferdinand Marcos,* 25 F.3d 1467, 1480 (9th Cir. 1994) ("We join the majority of circuits in

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 8

concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.").

Accordingly, Plaintiffs have demonstrated likelihood of irreparable harm.

3.   *Balance of the Equities and Public Interest*

Balancing the equities requires the Court to "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter,* 555 U.S. at 24.   "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.*

Defendants have failed to identify any specific harm they would suffer if the Court granted Plaintiffs' TRO until it resolved the motion to remand.  Instead, they highlight Plaintiffs' failure to mention any surety bond in their motion and offer the conclusory assertion that "[t]here is no reason why the balance of equities would favor Plaintiffs more than Defendants in this situation."  Dkt. #14 at 6.  Because this temporary injunction simply preserves the status quo until the motion to remand is resolved, the Court finds no significant injury to Defendants. Moreover, to the extent the injunction temporarily limits "Defendants' rights to manage their real properties," this injury is greatly outweighed by the injury Plaintiffs would suffer if Defendants dispose of their assets while this removal is pending.  *See INX, LLC*, 2013 WL 6729612, at \*3 (Finding defendant's injury "significantly outweighed by the substantial injury [plaintiff] would suffer if defendant could dispose of its only significant asset prior to the court's ruling on the attachment motion.").

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 9

Finally, Defendants contend that there is no public interest at stake, given that this action is merely a private dispute between parties.  Dkt. #14 at 7.  The Court disagrees.  Temporarily enjoining Defendants from disposing of their properties during the pendency of Plaintiffs' motion to remand serves the public's interest in "protecting creditors from fraudulent or wrongful disposal of property by a debtor."  *INX, LLC*, 2013 WL 6729612, at \*3 (citing *Thompson v. DeHart,* 84 Wash.2d 931, 937, 530 P.2d 272 (Wash. 1975).

For these reasons, the balance of equities and public interest weigh heavily in favor of granting Plaintiffs' requested injunction.

**B.  Required Security under Rule 65(c)**

"The Court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The Ninth Circuit has recognized that Rule 65(c) "invests the district court with discretion as to the amount of security required, if any."  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotations omitted).  The district court may therefore "dispense with the filing of a bond when it concludes that there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id*.

Plaintiffs have not addressed the issue of security.  Defendants claim that a bond should be imposed of "not less than $100,000 to protect Defendants' interests, which represents ten (10) percent of the alleged property values" stated in Appendix A.  Dkt. #14 at 6, n.4.  Because the Court is not fully informed on the issue of security, the Court will direct the parties to meet and confer about this issue and file separate briefing.

//

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 10

## IV.    CONCLUSION

The Court, having considered Plaintiffs' Motion, the declarations and exhibits in support thereof, and the remainder of the record, hereby finds and ORDERS:

(1) Plaintiffs' Motion for Temporary Restraining Order, Dkt. #11, is GRANTED.

(2) Effective as of the date of this order, all Defendants, including any corporate entities under their control, are hereby **ENJOINED AND RESTRAINED** from selling, transferring, encumbering, or otherwise altering their interest in the properties identified on Appendix A to Plaintiffs' motion for writ of attachment. *See* Dkt. #2, at 430 of 571 (the "Appendix A Properties"). The Appendix A Properties are reproduced herein below:

| Parcel ID | Owner/ Taxpayer | Address | Assessed Value | Latest Unexpunged Mortgage(s) | Estimated Remaining Equity |
|---|---|---|---|---|---|
| 062205-9001 and 062205-9061 | Garden Ridge Investment LLC | 19221, 19223, and 19225 Talbot Road S, Renton, WA 98055, USA | $1,002,000 (comprising $236,000 and $766,000 respectively) | $1,000,000 as of January 26, 2017 $3,000,000 as of December 15, 2017 | $0 |
| 28052000203000 | Silver Plaza LLLP | 10521 19th AVE SE, Everett, WA 98208, USA | $3,442,300 | $290,000 as of March 10, 2015 $2,240,000 as of July 2, 2018 | $912,300 |
| 300509-003-041-00, 300509-003-004-00, and 300509-003-003-00 | Premium Place LP | 11432 41st Drive Northeast, Marysville, WA 98271 | $976,600 (comprising $30,400, $753,000 and $193,200 respectively) | Judgment for sale of property on September 4, 2020 for debt of $862,925.55 | Possible remaining proceeds of $113,674.45 |

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 11

| Parcel ID | Owner/ Taxpayer | Address | Assessed Value | Latest Unexpunged Mortgage(s) | Estimated Remaining Equity |
|---|---|---|---|---|---|
| | | | | | |
| | | | Total: | $7,392,925.55 | **$1,025,974.45** |

      (3) This injunction is effective as of the date of this Order and will remain in effect until resolution of Plaintiffs' pending motion for remand, Dkt. #5, or as otherwise directed by the Court.

      (4) The Court DIRECTS the parties to meet and confer, then file supplemental briefing, not to exceed six (6) pages, as to the necessity of security under Rule 65(c). **This briefing is due no later than seven (7) days from the date of this Order.**

      DATED this 23rd day of December, 2020.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 12